### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERMOND SANTANNA,** | : | **No. 3:12cv1240** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **DELAWARE AND HUDSON** | : | |
| **RAILWAY COMPANY INC. d/b/a** | : | |
| **CP RAIL SYSTEMS,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### <u>MEMORANDUM</u>

Before the court for disposition are Defendant Delaware and Hudson Railway Company Inc.'s (hereinafter "defendant") motions in limine. The issues are fully briefed and ripe for disposition.

**Background**

Plaintiff Ermond Santanna (hereinafter "plaintiff") was hired by defendant's predecessor company, the Delaware and Hudson Railroad Corporation (hereinafter "D&H"), in 1977 and worked for approximately one year as a trackman. He then entered train service in July 1978, working as a conductor or brakeman for D&H and then for the defendant until December 2011 when medical issues with both of his knees precluded continued employment.

In 1988, D&H went bankrupt. In 1991, defendant purchased substantially all of D&H's corporate assets pursuant to an Asset Purchase Agreement. Plaintiff alleges that he suffered a knee injury in January 2010 when he fell while working in defendant's Mohawk Yard. Additionally, plaintiff claims a cumulative trauma injury - also known as a repetitive stress injury - caused by years of walking on uneven surfaces on or near

the tracks where he worked.  As a result of the cumulative trauma, plaintiff developed severe arthritis in his knees causing him to be disabled.

Plaintiff initiated this action on June 28, 2012, pursuant to the Federal Employer's Liability Act, 45 U.S.C. §§ 51-60, for injuries and damages allegedly sustained during the course of his employment with defendant.  In support of his repetitive stress injury claims, plaintiff relies upon the expert testimony of Ellen R. Smith, an ergonomist, and Steven Valentino, D.O., an orthopedic specialist.

In anticipation of the pretrial conference, defendant filed two motions in limine.  (Docs. 20, 22).  Defendant's motions seek to: (1) exclude the testimony of plaintiff's two proposed expert witnesses; and (2) preclude plaintiff from entering into evidence any alleged injuries sustained prior to January 1991.

**Discussion**

Defendant filed two motions in limine.  We will discuss each motion in turn.

### I. Motion to Preclude Testimony of Plaintiff's Experts

Defendant moves to preclude the testimony of plaintiff's proposed expert witnesses, Ellen R. Smith, OTR, CVE, CPE, an ergonomist; and Steven Valentino, D.O., an orthopedic specialist.  (Doc. 20, Def.'s Mot. in Limine).

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods

reliably to the facts of the case." FED. R. EVID. 702.  Courts have described the function of the district court in determining whether to admit expert testimony as a "gatekeeping" one. The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). Thus, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in a particular field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).

There are three major requirements of a Rule 702 analysis of proposed expert testimony: "'(1) the proffered witness must be an expert, *i.e.,* must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge[, *i.e.*, reliability]; and (3) the expert's testimony must assist the trier of fact[, *i.e.,* fit].'" United States v. Schiff, 602 F.3d 152, 172 (3d Cir. 2010) (quoting Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008)).

In the present matter, the defendant does not dispute that plaintiff's experts' testimony would assist the trier of fact.  Rather, the defendant first asserts that plaintiff's expert, Ellen R. Smith, is unqualified to provide testimony as to the medical causation of plaintiff's alleged injuries. Defendant also disputes the reliability of the methodology employed by both of plaintiff's experts in their respective determinations that plaintiff's injuries relate to his work on defendant's railroad.  The court will address these issues in turn.

3

### 1. The expert's qualifications

Initially, defendant challenges Smith's qualifications to provide medical causation testimony in this case.  Defendant asserts that because Smith is not a doctor she is not qualified to give an opinion as to the medical causation of plaintiff's injuries and therefore her testimony should be precluded at trial.  Plaintiff does not contend that Smith is qualified to provide medical causation testimony.  Rather, plaintiff asserts that Smith is an ergonomic expert and is sufficiently qualified to provide opinions and testimony about the conditions of plaintiff's work place and the exposures he encountered that led to his injuries.

To decide whether an expert is qualified, courts must assess whether the expert has specialized knowledge in his testimony, which may be based in practical experience as well as academic training and credentials.  See Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000).  The specialized knowledge requirement has been interpreted liberally in the substantive as well as the formal qualification of experts; "'at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . . .'"  Id. (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998)).

Here, the court finds that Smith is qualified as an expert in the field of ergonomics.  She has over twenty-five (25) years of experience in the field, as well as extensive education and training.  (Doc. 26-2, Ex. B, Smith Curriculum Vitae at 1).  Additionally, Smith's curriculum vitae demonstrates that she possesses greater skill or knowledge than the average layman regarding the subject of her testimony.  Smith is a graduate of the University of Pennsylvania with a degree in Occupational

4

Therapy and has a Master degree from NYU in Occupational Bio-Mechanics and Ergonomics and also has extensive professional experiences in ergonomics and biomechanics. (Id.) Smith has been involved in 100-125 railroad related cases, which has enhanced her knowledge of issues related to railroad safety programs. (Id.) Smith's testimony could assist the trier of fact in determining the extent to which plaintiff's work conditions and environment led to his injuries. Moreover, if defendant asserts that Smith is not well versed in railroad safety conditions and their potential harmful effects on employees of the railroad, defendant may cross examine Smith on that issue and argue it to the jury. Accordingly, defendant's argument that Smith is not qualified is without merit.

**2. Methodology**

Defendant's second challenge to plaintiff's experts is that their opinions are not based upon proper and reliable methodology. Specifically, defendant asserts that their conclusions that plaintiff's arthritis of the knees is related to his employment are incorrect. Defendant contends that Smith's opinions are not based on proper and reliable methodology and that Dr. Valentino's opinions are speculative. We find no merit to the defendant's argument.

District courts are tasked with assessing the techniques and methodologies employed by the expert when determining the reliability of his proposed opinion. To qualify as reliable, the "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994), cert. denied, 513 U.S. 1190 ("Paoli

II"), (quoting <u>Daubert</u>, 509 U.S. at 590).  Essentially, "an expert opinion must be based on reliable methodology and must reliably flow from that methodology and the facts at issue-but it need not be so persuasive as to meet a party's burden of proof or even necessarily its burden of production."  <u>Heller v. Shaw Indus., Inc.</u>, 167 F.3d 146, 152 (3d Cir. 1999). Furthermore, district courts should not determine the correctness of a proposed witness's opinion.   <u>Paoli II</u>, 35 F.3d at 744 (stating that "[t]he grounds for the expert's opinion merely have to be good, they do not have to be perfect.").  As the Third Circuit Court of Appeals has noted:

> A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate. He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence.

<u>Id.</u> at 744-45.

In the instant case, defendant first seeks to preclude Smith's testimony pertaining to the following conclusion:

> This Ergonomics Consultant believes that based upon my analysis of Mr. Santanna's work, prior site inspections for other Conductors, my over 25 years of ergonomics experience and a review of the literature, that within a reasonable degree of ergonomic certainty, Mr. Santanna's 34 years work as a Conductor exposed his knees to degenerative joint disease risk factors, which at a minimum, accelerated the degenerative process of knee osteoarthritis in these weight bearing joints.

(Doc. 21-1, Ex. A, Smith report at 15).

In its motion, defendant asserts that Smith failed to follow any methodology in reaching her conclusion regarding plaintiff's injuries.  In support of this assertion, defendant cites to the declaration of Kurt T. Hegmann, M.D., M.P.H., in which Dr. Hegmann states that Smith does not appear to have followed any methodology in reaching her conclusion.

6

(Doc. 21-1, Ex. C, declaration of Dr. Hegmann).  Dr. Hegmann noted Smith failed to: (1) conduct an assessment of risk factors generally associated with the development of knee arthritis as they specifically relate to plaintiff; (2) conduct a site inspection; (3) set forth data from other referenced site inspections; and (4) quantify or measure any of the work activities she attributes to plaintiff's claimed knee arthritis (such as bending, kneeling, walking, etc.).  (Id. at ¶¶ 5-8).

Dr. Hegmann also claims that Smith's literature review is deficient, includes unreliable scientific studies, and fails to set forth any reliable methodology in support of her opinions with regard to the presence of ergonomic risk factors.  (Id. at ¶¶ 10-15).  Further, Smith failed to conduct a systemic review of the epidemiology and failed to consider the design of any such studies, did not seek to use prospective cohort studies, and provided no quantification of risk factors whether work related or non-work related.  (Id. at ¶ 14).  Finally, Smith is not qualified to give medical causation testimony because she is not a doctor and her opinion testimony that plaintiff's injuries were work force related should be precluded at trial.

Plaintiff argues that defendant's motion is based solely on the premise that Dr. Hegmann's methods are the accepted standard of any diagnosis of a railroader injured due to repetitive stress injuries.  Dr. Hegmann, however, was hired by the defendant to conduct his report and he has never examined or talked to plaintiff or his treating doctors. Plaintiff contends that defendant is seeking preclusion merely by providing disagreement of facts of evidence and nothing more.

Defendants contentions are misplaced.  Rule 702 speaks not only of

"scientific" but of "technical" and "other specialized knowledge," such as that demonstrated by Smith in this case.  Here, the methodology, principles and information relied upon by Smith in reaching her opinions are set forth, in detail in her expert report.  (See Doc. 21-1, Ex. A, Smith report).  Based on a careful review of he report, we find that it is clear that Smith is familiar with both the OSHA standards and the industry standards and is aware of the individual articles by experts in the field.  Not only does she cite to these standards, she utilizes them specifically to support her opinions.  Additionally, Smith's methods consist of a testable hypothesis. In her report, Smith notes that ergonomics are critical in curbing injuries especially when the jobs are associated with well-documented risk factors. This "hypothesis" was not only testable, but was part of the actual report of Smith.  Smith cites to numerous studies and her review of literature and industry standards are extensive.

    We find that it is not unreliable for an ergonomics expert to provide opinion testimony as to risk factors and defects associated with a railroaders work environment.  The extent of Smith's research into plaintiff's individual case may be the proper subject of cross examination and argument; however, in this instance it is not a basis to preclude the testimony.

    The defendant also seeks to preclude as unreliable the testimony of plaintiff's medical expert, Steven J. Valentino, D.O.  Dr. Valentino concluded:

> Based on today's evaluation, review of records, diagnostic studies, I apportioned the progression of his knee symptoms to his work related activities as noted. Accordingly I find that he is in need of ongoing treatment including exhausting conservative care in the form of Synvisc injections and physical therapy. Ultimately he will

need knee replacement surgery. The need for this surgery
is due to his ongoing disability and continued symptoms
and work activity as a railroad conductor.
(Doc. 21-2, Ex. B, Valentino report at 3).

Defendant asserts that Dr. Valentino's opinion and conclusion
regarding the cause of plaintiff's injuries is speculative and therefore
unreliable.  Dr. Valentino, however, is a board-certified, University of
Pennsylvania fellowship-trained orthopedic surgeon who has been
practicing in the Philadelphia area for over 20 years.  (Doc. 26-3, Ex. C,
Valentino Curriculum Vitae).  Dr. Valentino specializes in the
comprehensive treatment of all orthopedic conditions.  (Id.)

Upon close examination of Dr. Valentino's report, the court finds
that it is clear that Dr. Valentino followed the proper methodology and cited
extensively to the principles and information he relied upon in reaching his
opinion.  Dr. Valentino's extensive education and experience in the field of
Orthopedic surgery, clearly qualified him to provide a report regarding
plaintiff's knee conditions.  Moreover, Dr. Valentino performed an
extensive records review and review of diagnostic materials in this case,
took a detailed history of the plaintiff's work history and performed a
physical examination on the plaintiff.   (Doc. 21-2, Ex. B, Valentino report
2-4).  Based on his extensive review and observations of plaintiff, Dr.
Valentino concluded that plaintiff's need for future surgery related to his
work activities.  (Id. at 3).

Again, we find that it is not unreliable for a highly trained Orthopedic
surgeon with years of experience who had the opportunity to conduct a
thorough examination of plaintiff to provide opinion testimony as to the
medical causation of plaintiff's injuries. The extent to which Dr. Valentino's
opinion was based on proper research and methodologies may be the

9

subject of cross examination but it does not provide a basis to preclude Dr. Valentino's testimony in this case.  Accordingly, the defendant's argument that both of plaintiff's experts testimony should be precluded at trial will be denied.

### II. Motion to Exclude Evidence of Alleged Injuries Sustained Prior to 1991

Defendant next argues that we should exclude evidence of plaintiff's repetitive stress injuries allegedly suffered prior to January 1991, the date that defendant purchased substantially all of the assets of the bankrupt D&H, pursuant to an Asset Purchase Agreement.   Defendant argues that the 1991 Asset Purchase Agreement bars any successor liability claims by plaintiff for the time period that he worked for the old D&H from May 1977 to January 1991.

Defendant relies on the Pennsylvania doctrine that when a buyer (transferee) entity purchases all of the assets of the seller (transferor) entity, the buyor entity cannot be held liable for the debts and liabilities, including torts, of the transferor.  Husak v. Berkel Inc., 341 A.2d 174 (Pa. Super. Ct. 1975); Conway v. White Trucks, 885 F.2d 90 (3d Cir. 1989). Under this rule, defendant cannot be held responsible for any liabilities incurred by the old D&H prior to 1991.

Plaintiff responds that the issue of exclusion of evidence of injuries sustained prior to 1991 is not an evidentiary issue and thus a motion in limine on this matter is improper.  Alternatively, plaintiff contends that if the

court should review this as an evidentiary matter, the motion should be denied on its merits because successor liability attaches to the defendant in this case.

**Successor Liability**

The Federal Employers Liability Act, like virtually all employment law statutes, does not discuss whether the liabilities it creates may be passed on to innocent successor employers.  Beginning with cases under the National Labor Relations Act ("NLRA"), however, federal courts have developed a federal common law successorship doctrine that now extends to almost every employment law statute.  See Golden State Bottling Co. v. NLRB, 414 U.S. 168 (1973).  Successor liability was adopted to avoid labor unrest and provide protection for employees against the effects of a sudden change in the employer.  Id. at 182-85; John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 549 (1964).

The Third Circuit has identified three factors to examine in deciding whether successor liability may be appropriate:

> (i) the successor must have notice of the potential liability;
>
> (ii) there must be a sufficient continuity of operations and workforce; and
>
> (iii) the predecessor entity must be unable to provide adequate relief to the victimized employees.

Teamsters Pension Trust Fund of Phila. & Vicinity v. Littlejohn, 155 F.3d

206 (3d Cir. 1998).

In the instant case, the Delaware and Hudson Corporation was sold to a new entity known as the Delaware and Hudson Railway Company. (Doc. 23-2, Ex. B-1, Asset Purchase Agreement).  The new company ran trains on the same tracks of the predecessor, kept all of its employees, maintained the same line workers and the same management and performed essentially the same business as its predecessor.  (Doc. 25, Pl.'s Br. in Opposition at 2).

Additionally, defendant does not dispute that it was on notice of plaintiff's work force-related injuries suffered over the course of his employment.  The predecessor entity, the now defunct D&H,  is unable to provide any relief to plaintiff as its business operations were discontinued as of the date of the Asset Purchase Agreement.  (Doc. 23-2, Ex. B-1, Asset Purchase Agreement).  Thus, each of the factors has been met to establish successor liability.  As such, defendant's motion in limine to exclude evidence of plaintiff's injuries sustained prior to 1991 will be denied.

**Conclusion**

For the reasons set forth above, the defendant's motions in limine will be denied.  An appropriate order follows.

**Date: <u>February 18, 2014</u>**              **<u>s/ James M. Munley</u>**
                                               **JUDGE JAMES M. MUNLEY**
                                               **United States District Court**