## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERMOND SANTANNA, | : | No. 3:12cv1240 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| DELAWARE AND HUDSON | : | |
| RAILWAY COMPANY INC. d/b/a | : | |
| CP RAIL SYSTEMS, | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court for disposition is Defendant Delaware and Hudson Railway Company Inc.'s motion for reconsideration of its motion in limine to exclude evidence of alleged injuries sustained prior to 1991. This issue has been fully briefed and is ripe for disposition.

**Background[1]**

This case arises from injuries suffered by Plaintiff Ermond Santanna (hereinafter "plaintiff") during the course of his employment with Defendant Delaware and Hudson Railway Company, Inc. (d/b/a CP Rail Systems) (hereinafter "defendant") as well as defendant's predecessor company, the Delaware and Hudson Railroad Corporation (hereinafter "D&H"). Plaintiff

---

[1] The following facts are undisputed as set forth within the plaintiff's and defendant's pretrial memorandums. (See Doc. 45, Pl.'s Pretrial Mem. at 6-9; Doc. 48, Def.'s Pretrial Mem. at 4-6). Because the facts are undisputed, the court will forego citations.

was hired by D&H in 1977 and worked for approximately one year as a trackman.  He then entered train service in July 1978, working as a conductor or brakeman for D&H and then for defendant until December 2011 when medical issues with both of his knees precluded continued employment.

In 1988, D&H went bankrupt.  In 1991, defendant purchased substantially all of D&H's corporate assets pursuant to an Asset Purchase Agreement.  Plaintiff alleges that he suffered a knee injury in January 2010 when he fell while working in defendant's Mohawk Yard.  Additionally, plaintiff claims a cumulative trauma injury - also known as a repetitive stress injury - caused by years of walking on uneven surfaces on or near the tracks where he worked.  As a result of the cumulative trauma, plaintiff developed severe arthritis in his knees causing him to be disabled.

Plaintiff initiated this action on June 28, 2012, pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60, for injuries and damages allegedly sustained during the course of his employment with defendant.

In anticipation of the pretrial conference, defendant filed two motions in limine.  (Docs. 20, 22).  Defendant's motions sought to: (1) exclude the testimony of plaintiff's two proposed expert witnesses; and (2) preclude

plaintiff from entering into evidence any alleged injuries sustained prior to January 1991.  After careful consideration, the court denied defendant's motions in limine.  Defendant then filed the instant motion for reconsideration, and the parties briefed the issues bringing the case to its present posture.

**Legal Standard**

Defendant seeks reconsideration of the court's February 18, 2014 order, which denied defendant's motion in limine to exclude evidence of alleged injuries sustained prior to 1991.  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  Harsco Corp. v. Zlotnicki, 799 F.2d 906, 909 (3d Cir. 1985); Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  The movant must demonstrate one of three grounds for such a motion to be granted: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice.  Max's Seafood Cafe, 176 F.3d at 677.   A motion for reconsideration is not a proper vehicle merely to attempt to convince the court to rethink a decision it has already made.  Glendon Energy Co. v. Borough of Glendon, 836 F. Supp.1109, 1122 (E.D. Pa. 1993).  Such

motions may not be used to give a dissatisfied party a chance to "[change] theories and try again," and thus obtain a "'second bite at the apple.'" Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995); see also Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (finding that "The simple fact that [plaintiff] is unhappy with the result of the April 19, 2001 opinion is an insufficient basis to grant her relief.").

**Discussion**

In our Memorandum and Order dated February 18, 2014, we denied defendant's motion in limine to exclude evidence of plaintiff's alleged injuries sustained prior to 1991 under a theory of successor liability.  We first found that the defendant, as the successor corporation to the predecessor D&H, had notice of its potential liability for plaintiff's work-force related injuries.  We then focused on the continuity of operations between the defendant corporation and D&H and determined that they were so parallel in operations, services and employees that they remained sufficiently similar entities.  Finally, we found that the now defunct D&H was incapable of providing adequate relief to the plaintiff.

In its motion for reconsideration, defendant does not assert an intervening change in controlling law or new evidence not previously

4

available.  Rather, defendant argues that the court committed a manifest error of law by inappropriately applying successor liability principles.  The defendant also argues that even if successor liability principles apply, the factual record does not support a finding of successor liability.  We will address each argument separately.

## I. Successor Liability Law

Defendant relies on Pennsylvania's successor liability doctrine, which states that when a buyer (transferee) entity purchases all of the assets of the seller (transferor) entity, the buyer entity cannot be held liable for the debts and liabilities, including torts, of the transferor.  Husak v. Berkel Inc., 341 A.2d 174 (Pa. Super. Ct. 1975); Conway v. White Trucks, 885 F.2d 90 (3d Cir. 1989).  Under this rule, defendant avers it cannot be held responsible for any liabilities incurred by the old D&H prior to 1991.[2]

---

[2] Defendant's assertion, however is a **general** statement of Pennsylvania's corporate law, which contains four exceptions to this rule:

> [W]here (1) the purchaser of assets expressly or impliedly agrees to assume obligations of the transferor; (2) the transaction amounts to a consolidation or de facto merger; (3) the purchasing corporation is merely a continuation of the transferor corporation; or (4) the transaction is fraudulently entered into to escape liability, a successor corporation may be held responsible for the debts and liabilities of its predecessor.

5

The Supreme Court, however, has outlined a **federal** successor liability doctrine designed to augment state law to avoid labor unrest and provide broader protection for employees against the effects of a sudden change in the employer.  See Golden Sate Bottling Co. V. NLRB, 414 U.S. 168, 182-85 (1973); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 549 (1964).  This successorship doctrine now extends to almost every employment law statute, including the Federal Employer Liability Act.  See Golden Sate Bottling Co. V. NLRB, 414 U.S. 168 (1973); Schweitzer v. Consol. Rail Corp., 758 F.2d 936, 943-44 (3d Cir. 1985) (reversing the bankruptcy court's ruling that the latent FELA claims of former rail workers were discharged as a result of the insolvent railroad's bankruptcy proceedings).

The defendant contends that the Supreme Court only intended this successorship doctrine to be broadened in the context of labor law issues, collective bargaining agreements, or a merger, none of which are involved in the present matter.  Moreover, the defendant argues the only liabilities it

---

Phila. Elec. Co. v. Hercules, Inc., 762 F.2d 303, 308-09 (3d Cir. 1985) (citing Husak v. Berkel, Inc., 341 A.2d 174, 176 (Pa. Super. Ct. 1975)). Here, as discussed *infra*, plaintiff points to the third exception and argues that the Asset Purchase Agreement was merely a continuation of the transferor corporation.

assumed under the Asset Purchase Agreement were the specifically enumerated contracts, and not FELA liability.  Federal courts, however, have found that rather than distinguishing among mergers, consolidations, and asset purchases, the guiding principle of the successorship analysis is to be whether the "employing industry" remains essentially the same after the change in ownership.  N. L. R. B. v. Burns Int'l Sec. Servs., Inc., 406 U.S. 272, 300 (1972); N.L.R.B. v. Colten, 105 F.2d 179, 183 (6th Cir. 1939).  As such, merely because a successor corporation purchases substantially all of the assets of a predecessor in an Asset Purchase Agreement, rather than through a merger, the protection granted to employees against the effects of a sudden change in employer need not be removed.  Thus, we reject defendants legal arguments grounded in state law where federal law applies.

## II. Factual Analysis

As set forth in our original motion in limine ruling, the Third Circuit Court of Appeals has identified three factors to examine in deciding whether successor liability may be appropriate:

> (i) the successor must have notice of the potential liability;
>
> (ii) there must be a sufficient continuity of operations and workforce; and

7

(iii) the predecessor entity must be unable to provide

adequate relief to the victimized employees.

Teamsters Pension Trust Fund of Phila. & Vicinity v. Littlejohn, 155 F.3d

206 (3d Cir. 1998).

Defendant argues that the facts of record do not meet these

elements.  Defendant does not dispute the first and third elements of

successor liability.  Rather, the defendant contends that the absence of a

sufficient continuity of operations and workforce between D&H and CP

Rail Systems precludes liability.  Plaintiff argues that the entire purpose of

CP Rail systems' Asset Purchase Agreement was to continue the

operations of the now defunct D&H.  We agree with the plaintiff.

Plaintiff submits the affidavit of Dennis Barnett to support his

contention that the defendant continued D&H's operations and workforce.

(See Doc. 40-1, Aff. of Dennis Barnett).  Specifically, Barnett began

working for D&H in 1974 as a Trainman/Conductor.  (Id. ¶¶ 1-2).  Barnett

continued working for D&H through the defendant's Asset Purchase

Agreement and remained employed with the defendant until his retirement

in 2010.  (Id. ¶ 2).  Barnett states that "[a]fter CP Rail took over operations

of the [D&H] in the early 1990's[,] we still used the same rail lines, same

rail crews and performed essentially the same rail services as we had

8

done so while on the Delaware & Hudson RR." (Id. ¶ 3).  We find the

plaintiff has demonstrated a sufficient continuity of operations and

workforce between D&H and the defendant and the court will find

successor liability.  See Fall River Dyeing & Finishing Corp. v. N.L.R.B.,

482 U.S. 27, 28 (1987) (finding successor liability where substantial

continuity exists between the enterprises with particular emphasis on

whether the successor corporation retained the same employees as the

predecessor).

**Conclusion**

     For the reasons set forth above, the defendant's motion for

reconsideration of the court's denial of its motion in limine to exclude

evidence of alleged injuries sustained prior to 1991 will be denied.  An

appropriate order follows.


**Date:  March 31, 2014**          **s/ James M. Munley**
                                                     **JUDGE JAMES M. MUNLEY**
                                                     **United States District Court**